ATWELL, APPELLANT, *v.* THE STATE OF OHIO, APPELLEE.

[Cite as Atwell v. State (1973), 35 Ohio App. 2d 221.]

(No. 32025—Decided August 23, 1973.)

222

*Mr. George P. Allen*, for appellant.

*Mr. John T. Corrigan*, prosecuting attorney, for appellee.

KRENZLER, J. Plaintiff filed a petition in the East Cleveland Municipal Court pursuant to the provisions of R. C. 4511.191 requesting a hearing concerning the order of the Registrar of Motor Vehicles suspending her driver's license. (R. C. 4511.191(F).)

The substance of her petition is that the arresting officers did not have reasonable grounds to believe that plaintiff was driving a motor vehicle upon a public highway while under the influence of alcohol and that there was no probable cause for her arrest.

Plaintiff further alleges that she did not refuse to submit to a chemical test after having first been advised of the consequences of a refusal to submit to such test, nor was she adequately advised of the consequences of a refusal to submit to said chemical test.

Plaintiff asks that the order of the Bureau of Motor Vehicles suspending her driver's license be set aside and held for naught.

In response to filing of the petition, as provided for in R. C. 4511.191, the Registrar forwarded to the Clerk of Courts of Cuyahoga County a certified copy of these documents:

1. Affidavit of the arresting officer attesting to the refusal of the plaintiff to take a chemical test.

2. A copy of the letter sent from the Registrar to the plaintiff advising her of the proposed suspension and the opportunity to appeal under R. C. 4511.191(F).

The case was tried in the East Cleveland Municipal Court. The witnesses were the plaintiff and Patrolmen Dixon and Longstreth, the two police officers who arrested the plaintiff.

A careful reading of the transcript of the testimony establishes that the following is the substance of the testimony.

The plaintiff was seen driving away from the scene of an alleged accident and was followed by the police of-

ficers in a police car. They pulled alongside of her and requested that she stop. She started to back her car and pulled away and drove to her home where she parked the car in her driveway. She got out of the car and was in a nervous state, was very belligerent and was crying. Police officers testified that she stumbled and had alcohol on her breath. She was arrested and taken to the East Cleveland Police Station where she was asked if she would take a chemical test pursuant to the provisions of R. C. 4511.191. The statement prescribed by the Registrar of Motor Vehicles was read to her and the affidavit was executed by Officer Dixon in the presence of Officer Longstreth, and also in the presence of Patrolman Biddelman.

On cross-examination the police officers testified that there was nothing unusual about her driving, and that there was no reason to believe that she was driving under the influence of alcohol before she was stopped. Officer Dixon testified that he did not conclude that she was driving while under the influence of alcohol until after she was stopped and taken out of the car.

The police officer's affidavit was sent to the Registrar of Motor Vehicles. The plaintiff filed a petition and the documents enumerated above were forwarded to the Clerk of Courts of Cuyahoga County, and at the trial the prosecutor offered them in evidence and they were accepted into evidence by the trial court. The Registrar of Motor Vehicles did not forward these documents directly to the East Cleveland Municipal Court.

There was a conflict in the testimony as to whether the plaintiff refused to take the test. Plaintiff testified that she was not aware the police officers wanted her to take the test nor did she refuse to take the test, and the Police Officers Dixon and Longstreth testified that she did refuse to take the test.

There was evidence that the breathalyzer test equipment in East Cleveland was not working on the date of the plaintiff's arrest but that East Cleveland Police could administer the test in Cleveland Heights.

The trial court concluded that the plaintiff failed to show error in the action taken by the registrar in one or

more of the four matters within the scope of the hearing and denied the petition and affirmed the suspension of plaintiff's driver's license for a period of six months, effective May 3, 1972.

The plaintiff has taken this appeal from the judgment of the trial court suspending her driver's license.

The plaintiff has four assignments of error, as follows:

I. That there was error in the proceedings in that the Registrar of Motor Vehicles did not comply with the statutory requirement that a certified copy of the affidavit of the enforcement officer be filed with the Clerk of Court of the East Cleveland Municipal Court. The Registrar as a matter of fact filed the affidavit with the Clerk of the Common Pleas Court and a copy with the office of the Prosecutor of Cuyahoga County.

II. That there was error in the procedure followed at the East Cleveland Police Station, in that a fully certified and operating breathalyzer was not available to perform a legal chemical test upon the Plaintiff-Appellant.

III. That there was error on the part of the arresting officers in that they did not have reasonable grounds to believe that the Plaintiff-Appellant was driving under the influence of alcohol prior to arresting her in her driveway for driving while under the influence of alcohol.

IV. There was error in that the Plaintiff-Appellant did not understand the implied consent law of the State of Ohio due to her physical, mental and emotional condition at the time she was requested to comply with the implied consent rule and take or refuse to take a chemical test as prescribed under *Section 4511.191 of the Ohio Revised Code*. Due to her physical, mental and emotional condition, she did not realize or understand that she was asked to take a chemical test, nor did she have knowledge of the penalty if she refused to submit to said chemical test.

This is one of a series of cases interpreting various aspects of R. C. 4511.191, the implied consent law. The current status of this law has been expressed in *In re Brooks* (1971), 27 Ohio St. 2d 66; *Hoban* v. *Rice* (1971), 25 Ohio St. 2d 111; *State* v. *Starnes* (1970), 21 Ohio St. 2d 38;

*Fell* v. *Bureau of Motor Vehicles* (1972), 30 Ohio App. 2d 151; *State* v. *Hurbean* (1970), 23 Ohio App. 2d 119.

In this case we are only dealing with R. C. 4511.191, the implied consent law, which is civil and administrative and is considered separate and apart from the criminal action of R. C. 4511.19, driving while intoxicated. *Hoban* v. *Rice, supra.*

The substance of R. C. 4511.191, the implied consent law, is that every person who operates a motor vehicle on the public highways in Ohio has given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if arrested for the offense of driving while under the influence of alcohol.

The test shall be administered at the direction of a police officer having reasonable grounds to believe that the person was driving a motor vehicle upon the highways in this State while under the influence of alcohol.

Such person shall be advised at a police station of the consequences of his refusal to submit to such chemical test. This advice shall be in a written form prescribed by the registrar of motor vehicles and shall be read to such person. The form shall contain a statement that it was shown to the person under arrest and read to him in the presence of the arresting officer and one other police officer or civilian police employee. Such witness shall certify to this fact by signing the form.

If the person under arrest refuses to submit to the chemical test after first having been advised of the consequences of his refusal, the test shall not be given.

When the registrar of motor vehicles receives a sworn report by the police officer that he had reasonable grounds to believe the arrested person had been driving a motor vehicle upon the public highways in this State while under the influence of alcohol, and that the person refused to submit to the test after being advised of the consequences of his refusal, said registrar shall suspend his driver's license for a period of six months.

The registrar shall immediately notify the person in writing that his license has been suspended and that he

may appeal this decision and petition for a hearing.

Any person whose license to drive has been suspended under this section may within 20 days of the mailing of the notice by the Registrar of Motor Vehicles file a petition in the municipal or county court alleging error in the action taken by the registrar. Such petitioner shall notify the registrar of the filing of the petition and send him a copy. The scope of the hearing shall be limited to the following issues: (1) whether a police officer had reasonable ground to believe the person had been driving a motor vehicle on the public highways in this State while under the influence of alcohol; (2) whether the person was placed under arrest; (3) whether he refused to submit to the test upon request of the officer; (4) whether he was advised of the consequences of his refusal.

The registrar shall furnish a copy of the registrar's affidavit, which was prepared and signed by the arresting officer, to the court.

The court shall decide whether the registrar has erred in the action he has taken and this issue will be decided upon the registrar's certified affidavit and such additional, relevant, competent and material evidence as either the registrar or the person whose license is sought to be suspended submits.

If the court finds that there was no error in the action taken by the registrar he shall impose sentence by suspending the license for six months. If the court finds that such person has shown error in the action taken by the Registrar of Motor Vehicles the suspension of his driver's license shall not be imposed.

We will first consider plaintiff's third assignment of error because it is the principal issue in this case.

A most difficult issue to be decided by a municipal court is whether a police officer had reasonable grounds to believe that a person was driving a motor vehicle while under the influence of alcohol.

Reasonable grounds will be determined from the totality of all the facts and circumstances, including the person's actions immediately prior to his driving the motor vehicle; during the period of time he was driving the mo-

tor vehicle, including, but not limited to, the manner in which he was driving the motor vehicle; and immediately after he discontinued driving the motor vehicle, including his activities immediately after getting out of the motor vehicle.

It is not necessary that the police officer have reasonable grounds only from the manner in which the person was driving the motor vehicle because a person may be driving under the influence of alcohol and driving in a manner that would not indicate he was under the influence of alcohol. Each case must be decided on its own facts.

It was the intention of the legislature that the police officer determine whether there were reasonable grounds to believe the person was driving while intoxicated after all of the foregoing acts.

Reference to reasonable grounds is contained in several places in R. C. 4511.191, and all such references are in the past tense. It is stated in R. C. 4511.191(A): "* * * The test or tests shall be administered at the direction of a police officer having reasonable grounds to believe the person to have been driving a motor vehicle * * * while under the influence of alcohol. * * *"

R. C. 4511.191(D): "* * * but the Registrar of Motor Vehicles upon the receipt of a sworn report of the police officer that he had reasonable grounds to believe the arrested person had been driving a motor vehicle * * * while under the influence of alcohol. * * *"

R. C. 4511.191(F): "* * *The scope of such hearing shall be limited to the issues of whether a police officer had reasonable grounds to believe the person had been driving a motor vehicle upon the highways in this State while under the influence of alcohol. * * *"

When a police officer has reasonable grounds to believe that a person has been driving a motor vehicle while under the influence of alcohol, he shall immediately arrest such person and forthwith take him to the police station and request that he take the test provided for in R. C. 4511.191.

After carefully reviewing the record including the transcript of testimony, we cannot say that the police offi-

cer did not have reasonable grounds to believe that the plaintiff had been driving while under the influence of alcohol. The third assignment of error is not well taken.

The first assignment of error is also not well taken. R. C. 4511.191(G) provides that the Registrar shall furnish the court a copy of the Registrar's affidavit provided for in R. C. 4511.191(C).

In this case the Registrar forwarded a certified copy of the affidavit to the Clerk of Cuyahoga County Common Pleas Court and not directly to the East Cleveland Municipal Court. However, the record reflects that the East Cleveland Municipal Court did receive the Registrar's affidavit; it was exhibited to the plaintiff's attorney; and was accepted by the trial court and admitted into evidence as defendant's Exhibit 2.

The fact that the Registrar did not send a certified copy of the affidavit directly to the East Cleveland Municipal Court is not considered prejudicial error. A certified copy of the Registrar's affidavit was available to the East Cleveland Municipal Court and to all of the parties who did not dispute its authenticity, before it was introduced in evidence.

The second assignment of error is not well taken. The record clearly supports a finding by the trial court that the plaintiff refused to take the breathalyzer test. The fact that the East Cleveland breathalyzer was not operable and plaintiff would have had to go to Cleveland Heights to take such a test is not material, nor is it considered prejudicial to the rights of the plaintiff, nor is it considered that the provisions of R. C. 4511.191 were not complied with. Evidence was that a Cleveland Heights breathalyzer was available.

The fourth assignment of error is not well taken.

The issue of what constitutes refusal and whether a person has refused to take the test was decided by the Ohio Supreme Court in *Hoban* v. *Rice* (1971), 25 Ohio St. 2d, 111, 117, " * * * The licensee's words, acts, overall conduct and other manifestations of a willingness or unwillingness to take the sobriety test will be considered by the trier of the facts in determining whether there was a refusal.

The determination will be based on an objective standard, not a subjective standard, such as the state of mind of the licensee. * * *"

As to the issue of whether the licensee understood the consequences of refusing to take the test, the Supreme Court said in *Hoban* v. *Rice, supra,* 118, "* * * R. C. 4511.191(C) requires only that the arresting officer advise the arrested person of the consequences of his refusal to submit to a chemical test. * * * When the advice as to the consequences of a refusal is given in the form prescribed by the Registrar, and there is a refusal to take the test, a claim by the licensee that he did not understand the consequences of refusing to take the test is not a defense to the license suspension. * * *"

The Supreme Court stated in Syllabus 3, "For the purpose of R. C. 4511.191, a refusal to submit to a chemical test of the blood, breath or urine will occur where a person, by his acts, words or general conduct, manifests an unwillingness to submit to the test. Such refusal need not have been knowingly and intentionally made."

If the sobriety test is administered to the arrested person, there will be no suspension of that person's drivers license under R. C. 4511.191(D), and consequently no further proceedings would be required under R. C. 4511.191(E) through (H).

If there is a refusal, by the person, to take the test, the test is not given and the registrar's affidavit will be forwarded to the registrar for the proceedings enumerated in R. C. 4511.191.

A question also arises as to the length of time the arrested person has in which to either take the test or refuse to take the test after he has been requested to take the test by the police officer.

It has been held that where there has been a refusal to take a test and approximately one-half hour after the refusal the person changed his mind about the original refusal and offered to submit to the breathalyzer test, it was too late to take the test because he had already refused. The two-hour provision of R. C. 4511.19 is only a restriction on admission into evidence of the results of such tests

and does not have the effect of extending the time within which an arrested person may choose to submit or refuse to submit to a chemical test under the provisions of R. C. 4511.191(D). *In re Brooks, supra.*

The police officer must immediately upon arriving at the police station make the required request for the test under R. C. 4511.191(C), and the person shall have a reasonable period of time after the request to decide whether he will take the test or refuse to take the test. What is a reasonable period of time will depend on all the facts and circumstances in each case.

The police officers are not expected to neglect their other duties and responsibilities and wait indefinitely for the arrested person to decide whether he will take the test or refuse to take the test. All that is required of the police officer is to request that the arrested person take the test and such person has a reasonable period of time in which to make a decision whether to take or refuse to take the test. If he refuses to take the test within a reasonable period of time, the police officer will then be warranted in forwarding the registrar's affidavit to the Registrar of Motor Vehicles in Columbus.

*Judgment affirmed.*

JACKSON and DAY, JJ., concur.