OPINION
{¶ 1} Appellant Shannon L. Grove appeals her convictions for speeding and driving under the influence of alcohol in the Fairfield County Municipal Court. The appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.
{¶ 2} On January 6, 2001, appellant was operating her Toyota Camry on State Route 33 (Memorial Drive) in Fairfield County. She passed a highway patrol cruiser being driven in the same direction by Trooper Laurie Lindsey. The trooper estimated her speed as over the limit, and proceeded to make an immediate traffic stop. The trooper advised appellant that she had been speeding, and noticed that appellant had about her an odor of alcoholic beverage, that appellant's speech was slurred, and that appellant's eyes appeared bloodshot. The trooper performed a brief horizontal gaze nystagmus ("HGN") test while appellant sat in her vehicle. At that point, appellant was asked to exit her vehicle and to accompany the trooper to the side of the cruiser, where a three-part field sobriety test was conducted. As a result thereof, the trooper advised appellant that she was under arrest for operating a motor vehicle under the influence of alcohol. Appellant requested to speak with her father, Attorney Raymond Grove. After a short wait, Attorney Grove appeared at the scene, conferred with appellant, and took custody of appellant's vehicle.
{¶ 3} Appellant was driven to highway patrol headquarters, where, according to Trooper Lindsey, she refused to take a blood-alcohol content test. Appellant was subsequently charged with speeding and driving under the influence of alcohol. On March 15, 2001, appellant filed a motion to suppress and/or dismiss. Following a hearing, said motion was denied by the trial court on June 25, 2001. The matter proceeded to a trial by jury on August 28, 2001. Appellant was thereafter convicted and sentenced on both counts.
{¶ 4} Appellant timely appealed and herein raises the following five Assignments of Error:
 {¶ 5} "I. THE TRIAL COURT ABUSED IT'S (SIC) DISCRETION IN FINDING DEFENDANT-APPELLANT GUILTY OF SPEED BY PROOF BEYOND A REASONABLE DOUBT."
 {¶ 6} "II. THE DEFENDANT-APPELLANT WAS DEPRIVED OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS WHERE IN A COURT OF RECORD THERE ARE SIX HUNDRED AND FOUR INAUDIBLE PROTIONS (SIC) OF THE TRANSCRIPT."
 {¶ 7} "III. DUE TO PROSECUTORIAL MISCONDUCT THE DEFENDANT-APPELLANT WAS DEPRIVED OF A FAIR TRIAL."
 {¶ 8} "IV. DEFENDANT-APPELLANT WAS DEPRIVED OF HER STATUTORY RIGHT TO A CONFIDENTIAL CONFERENCE WITH HER ATTORNEY UNDER § 2935.20 R.C. WHICH RESULTED IN DENIAL OF DUE PROCESS AND ASSISTANCE OF COUNSEL."
 {¶ 9} "V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY OVERRULING DEFENDANT-APPELLANTS (SIC) MOTION TO SUPPRESS AND/OR DISMISS THE CHARGES."
 I
{¶ 10} In her First Assignment of Error, appellant argues that the trial court erred in finding her guilty of speeding beyond a reasonable doubt. We disagree.
{¶ 11} We interpret appellant's claim as one based on the issue of sufficiency of the evidence. In considering an appeal concerning the sufficiency of the evidence, our standard of review is as follows: "* * * [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, 273.
{¶ 12} Trooper Lindsey testified at trial that she was proceeding on Memorial Drive just before 2 a.m., traveling at the speed limit of fifty mph. At that point, appellant's Toyota passed her in the left lane. The trooper pulled over to the left lane to a position behind appellant's vehicle. At that point, the trooper began "pacing" appellant's vehicle in order to gauge its speed. She testified that she had received training in this method. Tr. at 14-15. Based on her estimation, appellant was traveling at the rate of sixty mph.
{¶ 13} Upon full review of the record, and the trooper's visual estimate of appellant's speed, we find there was sufficient evidence supporting appellant's conviction for speeding. See State v. Napier
(July 30, 2001), Stark App. No. 2001CA00035, 2001 WL 1771036, (Ohio App. 5 Dist.).
{¶ 14} Appellant's First Assignment of Error is overruled.
 II
{¶ 15} In her Second Assignment of Error, appellant argues that her due process rights are denied when the prepared trial transcript purportedly contains over six-hundred "inaudible" portions. We disagree.
{¶ 16} We first note that an overview of the trial transcript reveals that a significant number of the "inaudible" markers are found in the transcription of the playing to the jury of the highway patrol's traffic stop video, as well as during the closing argument section. This Court has for its review the original tape regardless of the nature of the transcription thereof; furthermore, it is well-established that statements made by counsel in closing arguments are not evidence. SeeState v. Frazier (1995), 73 Ohio St.3d 323. Moreover, in State v.Palmer (1997), 80 Ohio St.3d 543, certiorari denied (1998), 525 U.S. 837, the Ohio set out a three-part test wherein a defendant raising as error a defective transcription must demonstrate that: "(1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue."
{¶ 17} Appellant herein has failed to demonstrate the second and third prongs of the Palmer test, and we therefore find no merit in her position.
{¶ 18} Appellant's Second Assignment of Error is overruled.
 III
{¶ 19} In her Third Assignment of Error, appellant alleges that she was deprived of a fair trial due to prosecutorial misconduct. We disagree.
{¶ 20} Appellant specifically cites as misconduct the prosecutor's closing commentary regarding appellant's alleged refusal to take a BAC test, and the prosecutor's attempt to subpoena Attorney Grove as a witness. We will address each in turn.
{¶ 21} The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1991),51 Ohio St.3d 160, 165, certiorari denied 498 U.S. 1017. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987),33 Ohio St.3d 19, 24. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168.
{¶ 22} Appellant directs us to the following statements made by the prosecutor during closing arguments:
 {¶ 23} We get to the post later on and she's there with a lawyer, her father. And she's told that take the test and you test over you have a 90-day suspension and if you refuse to take the test you get a one-year suspension. After she already said she hadn't had, not that much to drink and gets marked as a, as a refusal and she is told that it's a refusal, she doesn't protest one word. She'd rather take the one-year license suspension. Why? Why didn't she just take the test if she didn't have that much to drink?
Trial Tr. at 129-130.
{¶ 24} Appellant urges that the prosecutor's language improperly created an inference that appellant had a duty to explain why she allegedly refused to take the BAC test. We initially note that appellant failed to object to the aforesaid alleged instance of prosecutorial misconduct. Error not raised in the trial court must be plain error in order to reverse. State v. Johnson (Nov. 19, 1998), Richland App. No. 98-CA-42, 1998 WL 818026, citing State vs. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. Id. Plain error does not exist unless but for the error, the outcome of the trial would clearly have been otherwise. Statevs. Nicholas (1993), 66 Ohio St.3d 431, 613 N.E.2d 225.
{¶ 25} "It is well established that the refusal of a defendant to take a reasonably reliable chemical test for intoxication is admissible in evidence at trial." State v. McCoy (April 15, 2002), Stark App. No. 2001CA00125, 2002 WL 571686, citing State v. Murphy (Dec. 29, 1995) Brown App. No. CA 95-05-010, 1995 WL 764049. Appellant points out that the trial court, in a hearing on January 25, 2001, pursuant to R.C. 4511.191, had found appellant did not refuse the BAC test. However, the Ohio Supreme Court has determined that the administrative suspension of a driver's license is a civil action separate from the underlying criminal prosecution for an OMVI offense. See, e.g., McNulty v. Curry (1975),42 Ohio St.2d 341. We are therefore unpersuaded that plain error resulted from the allowance of the prosecutor's closing statements.
{¶ 26} Appellant secondly argues that it was prosecutorial misconduct for the state to subpoena her first attorney, Raymond Grove, as a witness.[1] Crim.R. 17(F) states that "[a]t the request of any party, subpoenas for attendance at a hearing or trial shall be issued by the clerk of the court in which the hearing or trial is held. A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within this state." It is undisputed that Attorney Grove was present as a witness to the latter stage of the traffic stop. However, appellant cites no authority in support of her premise that alleged misuse of subpoena powers is cognizable on appeal as a form of prosecutorial misconduct. Moreover, even if we accept appellant's proposition that the subpoena issuance forced her to employ a different attorney, appellant still fails to demonstrate such a result prejudicially affected her substantial rights. Lott, supra.
{¶ 27} Appellant's Third Assignment of Error is overruled.
 IV
{¶ 28} In her Fourth Assignment of Error, appellant argues that she was denied her right to confer with her counsel pursuant to R.C. 2935.20, and therefore was denied her constitutional right to due process. We disagree.
{¶ 29} R.C. 2935.20 reads in pertinent part as follows:
 {¶ 30} After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section. * * *.
{¶ 31} However, because the R.C. 2935.20 right to counsel is statutory and not constitutional, the Ohio Supreme Court has held that the exclusionary rule does not apply as a sanction against the state.Fairborn v. Mattachione (1995), 72 Ohio St.3d 345. Moreover, although Trooper Lindsey would not permit a confidential consultation at Highway Patrol headquarters because she had already commenced her pretest observation time, it is undisputed that appellant was afforded the opportunity to speak with Attorney Grove in private in the highway patrol cruiser at the scene of the traffic stop, during which time Trooper Lindsey turned off all her video and audio recording equipment.
{¶ 32} Appellant's Fourth Assignment of Error is overruled.
 V
{¶ 33} In her Fifth Assignment of Error, appellant argues that the trial court erred in denying her motion to suppress and/or dismiss. We disagree.
{¶ 34} There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; Statev. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams
(1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysiner, supra.
{¶ 35} Appellant's main argument is that the field sobriety tests were not administered by Trooper Lindsey as required by State v. Homan
(2000), 89 Ohio St.3d 421, and thus should have been excluded as a result of the motion to suppress. In Homan, the Ohio Supreme Court held that "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id., at paragraph one of the syllabus.
{¶ 36} Crim.R. 47 states that a motion to suppress "shall state with particularity the grounds upon which it is made." The state's burden of proof in a motion to suppress hearing is limited to those contentions that are asserted with sufficient particularity to place the prosecutor and court on notice of the issues to be decided. State v. Neuhoff
(1997), 119 Ohio App.3d 501, 506, 695 N.E.2d 825 (relying on State v.Shindler (1994), 70 Ohio St.3d 54, 636 N.E.2d 319, and Johnstown v.Jugan (Apr. 24, 1996), Licking App. No. 95CA90, 1996 WL 243805.) Failure of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal. City of Xenia v. Wallace
(1988), 37 Ohio St.3d 216, 218-219, 524 N.E.2d 889. In the case subjudice, appellant's motion to suppress did not contain any allegation that the trooper's field sobriety testing violated the rule set forth inHoman, nor is Homan cited therein. In said motion, appellant asserted in general terms that "* * * the lack of evidence of impaired driving and other facts discussed above indicate that Troopers [sic] did not have sufficient knowledge at the moment of the arrest to indicate that Defendant had committed the offense of OMVI * * *." Motion to Suppress at 5. However, no mention is made of the requirement of "strict compliance" with testing procedures. Although appellant's counsel raisedHoman orally, we find that the assertions in the motion to suppress were insufficient to put the prosecutor and trial court on notice as to the issue of whether the trooper wrongfully conducted the roadside sobriety testing. Predictably, a set of standardized procedures was never introduced or discussed in depth at the suppression hearing (see Tr. at 87), thus putting the trial court judge in the unenviable position of applying Homan without a clear measuring stick, the type of situation we believe Crim.R. 47 was designed to prevent.[2] Therefore, we hold appellant has waived her ability to challenge this issue on appeal.
{¶ 37} Appellant, relying on State v. Finch (1985),24 Ohio App.3d 38, et al., further argues that the common indicia of intoxication, i.e. bloodshot eyes, slurred speech, and/or an odor of alcoholic beverage, are insufficient by themselves to demonstrate probable cause for an OMVI arrest. We have previously recited that a police officer does not have to observe poor driving performance in order to effect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. See, e.g., State v. Harrop (July 2, 2001), Muskingum App. No. CT2000-0026, 2001 WL 815538, citing Atwell v. State (1973),35 Ohio App.2d 221. Nonetheless, as we have found the Homan argument waived in this appeal, we may review in analyzing this issue the trooper's recitation of the field sobriety tests, as well as the videotape of the traffic stop which was played at the suppression hearing.[3] On the HGN test, the trooper detected four out of six clues, and "couldn't get the driver to hold her eyes at the maximum deviation." Tr. at 27. On the walk-and-turn test, appellant failed to touch heel-to-toe on "a couple" of the numbers on the first nine steps. Tr. at 31. Appellant stumbled while doing the turn, and "on the walk back she never touched heel-to-toe; she just walked normally." Id. On the one-leg stand test, appellant put her foot down three times, counted the number "21" twice, and hopped after losing her balance. Tr. at 36.
{¶ 38} Based on our review of the record, we find probable cause existed to believe that appellant was operating a motor vehicle while under the influence of alcohol, and find no error in the trial court's decision to deny appellant's motion to suppress and/or dismiss.
{¶ 39} Appellant's Fifth Assignment of Error is overruled.
{¶ 40} For the reasons stated in the foregoing opinion, the judgment of the Municipal Court of Fairfield County, Ohio, is hereby affirmed.
By: WISE, J. EDWARDS, J., concur. HOFFMAN, P.J., concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Fairfield County, Ohio, is affirmed.
Costs to appellant.
[1] Attorney Grove was not counsel of record during the actual trial.
[2] The trial court ultimately dealt with Homan by concluding that the trooper "complied with her training at the Ohio State Highway Patrol Academy when she administered the the field sobriety tests to the defendant." Judgment Entry, June 25, 2001.
[3] The testing took place to the side of the trooper's cruiser, outside the scope of the camera. However, most of the audio portion is discernable.